**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON**

**DEAN JACKSON KINDER,**

      **Plaintiff,**

**v.**                                    **Case No. 3:13-cv-31596**

**PRIMECARE MEDICAL, INC.,**
**PRIMECARE MEDICAL OF WEST VIRGINIA,**
**WEST VIRGINIA REGIONAL JAIL,**
**DR. WONG, HEAD NURSE JANE DOES # 1,**
**HEAD NURSE JANE DOE # 2, and**
**UNNAMED CORRECTIONAL OFFICERS AT THE**
**WESTERN REGIONAL JAIL,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable Robert C. Chambers, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). On December 9, 2013, the plaintiff filed a Complaint under 42 U.S.C. § 1983 against PrimeCare Medical, Inc., PrimeCare Medical of West Virginia, the West Virginia Regional Jail Authority and the Western Regional Jail concerning his medical treatment at the Western Regional Jail. (ECF No. 2). After being granted leave by the court to amend his Complaint, on January 30, 2014, the plaintiff filed an Amended Complaint upon which this matter is now proceeding. The Amended Complaint added Dr. Wong, two unnamed nurses, and unnamed correctional officers at the Western Regional Jail as defendants.

Pending before the court are the following motions:  a Motion to Dismiss filed by the West Virginia Regional Jail Authority and the Western Regional Jail (ECF No. 29), a Motion to Dismiss filed by PrimeCare Medical, Inc., PrimeCare Medical of West Virginia, Dr. Wong, Head Nurse Jane Doe # 1 and Head Nurse Jane Doe # 2 (hereinafter the "PrimeCare Defendants") (ECF No. 33), the plaintiff's Motion to Amend [Amended] Complaint (ECF No. 39), and a Motion for Leave to File Supplemental Motion to Dismiss or in the alternative Motion for Summary Judgment filed by the PrimeCare Defendants (ECF No. 52).

## THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff's Amended Complaint (ECF No. 9) arises out of the alleged lack of medical treatment or "medical neglect" by healthcare professionals employed by the contracted medical provider at the Western Regional Jail ("WRJ").  The Amended Complaint alleges that Head Nurse Jane Does 1 and 2, and Dr. Wong, who are employees of PrimeCare Medical of West Virginia, a subsidiary of PrimeCare Medical, Inc., violated his federal constitutional rights under the Eighth and Fourteenth Amendments, by not calling 911 or providing medical attention to the plaintiff on two separate occasions, July 23, 2013 and August 6, 2013, when the plaintiff allegedly suffered a heart attack.  The plaintiff further alleges that the conduct of Head Nurse Jane Does 1 and 2, and Dr. Wong, constituted "medical neglect" and/or "medical malpractice."

On April 29, 2014, the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") and the WRJ (which is just a building owned and operated by

the WVRJCFA, and is not a separate entity)[1], by counsel, filed a Motion to Dismiss (ECF No. 29) and a Memorandum of Law in support thereof (ECF No. 30).  The WVRJCFA's motion asserts that this federal court lacks subject matter jurisdiction over the plaintiff's claims against it based upon the WVRJCFA's immunity from suit under the Eleventh Amendment.

On April 30, 2014, the PrimeCare Defendants, by counsel, filed a Motion to Dismiss (ECF No. 33) and a Memorandum of Law in support thereof (ECF No. 34).  The PrimeCare Defendants' motion asserts that the plaintiff has not pled sufficient facts to establish a violation of his federal constitutional rights that would be actionable under 42 U.S.C. § 1983 and that, to the extent that the plaintiff's Complaint is alleging a negligence or medical malpractice claim under West Virginia state law, such a claim must be dismissed because the plaintiff has failed to comply with certain pre-filing requirements under the West Virginia Medical Professional Liability Act (the "MPLA"), W. Va. Code § 55-7B-1 *et seq.*

The plaintiff was advised of his right to respond to these motions and deadlines were set for responses and replies.  (ECF Nos. 31 and 36).

On May 28, 2014, the plaintiff filed a Motion to Amend Complaint (ECF No. 39), in which he seeks to clarify that he did not intend to sue the WVRJCFA or the Western Regional Jail, but rather intended to sue the Directors [sic; Administrators] of the WVRJCFA and the Western Regional Jail "personally."   On June 11, 2014, the WVRJCFA opposed the Motion to Amend Complaint, asserting that the motion was made in a dilatory manner and is futile because the plaintiff failed to allege any personal

---

[1]  Due to the fact that the WRJ is not a suable entity, the undersigned will henceforth only refer to the WVRJCFA as the appropriate defendant.

involvement of either the Administrator of the WVRJCFA or the Administrator of the Western Regional Jail in his pleadings.  (ECF No. 45).  On June 16, 2014, the WVRJCFA also filed a Reply brief, arguing that, because the plaintiff stated that he did not intend to sue the WVRJCFA or the Western Regional Jail, their Motion to Dismiss should be granted as unopposed.  (ECF No. 49).

On June 17, 2014, the plaintiff filed a Response to both of the Motions to Dismiss (ECF No. 50).[2]  On August 11, 2014, the PrimeCare Defendants filed a Motion for Leave to File a Supplemental Motion to Dismiss, or in the alternative, Motion for Summary Judgment (ECF No. 52) (hereinafter "Supplemental Motion)[3], to which they have attached portions of the plaintiff's medical records.  The PrimeCare Defendants assert that, even if the plaintiff's Amended Complaint sufficiently alleges a claim of deliberate indifference to a serious medical need, the evidence is undisputed that the Primecare Defendants were not deliberately indifferent to any serious medical need of the plaintiff and they are entitled to judgment as a matter of law on that claim.

On August 18, 2014, the plaintiff filed a Response to the PrimeCare Defendants' Supplemental Motion (ECF No. 54), to which he has also attached excerpts from his medical records and requests that the PrimeCare Defendants' motion be denied.  This matter is ripe for adjudication.

---

[2]   By separate Order, the undersigned has granted the plaintiff's Letter-Form Motion for Extension of Time to Respond to Motions to Dismiss (ECF No. 42).  Accordingly, this Response is considered to have been timely filed.

[3]   By separate Order, the undersigned also granted the Motion for Leave to File the Supplemental Motion and will consider the arguments and evidence contained therein in making a recommendation for the disposition of this matter.

4

## STANDARD OF REVIEW

### *Dismissal for failure to state a claim upon which relief can be granted*

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.   However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The defendants' motions will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.   To the extent that the WVRJCFA asserts that the court lacks subject matter jurisdiction to hear the plaintiff's claim against it, the WVRJCFA's motion will also be addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## Summary Judgment

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.   The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).   Material facts are those necessary to establish the elements of a party's cause of action.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.   *Id.*   The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.   *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may:  (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, as does the PrimeCare Defenadnts' Supplemental Motion, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

## ANALYSIS

### A.    The WVRJCFA's Motion to Dismiss.

The WVRJCFA asserts that it is immune from suit under the Eleventh Amendment to the United States Constitution and, thus, this federal court lacks subject matter jurisdiction over the plaintiff's claim against it.  As noted recently in *Haley v. Virginia Dep't of Health*, 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va.  Nov. 13, 2012), "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6) . . . The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)."

The plaintiff seeks monetary damages from the WVRJCFA for the alleged failure to provide him with medical treatment while he was in custody at the WRJ.  In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary

8

liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

As noted by the WVRJCFA in its Memorandum of Law, the plaintiff's case does not meet any of the narrow exceptions to a state's immunity under the Eleventh Amendment:  the State of West Virginia has not waived its immunity or consented to this suit; Congress did not abrogate state immunity when 42 U.S.C. § 1983 was enacted; and the plaintiff does not seek prospective injunctive relief from the WVRJCFA or any of its officials or employees.  The only "injunctive" relief sought in the plaintiff's Amended Complaint concerns the revocation of the medical licenses of the individual PrimeCare defendants, over which this court has no control.

Accordingly, to the extent that the plaintiff has attempted to sue the WVRJCFA for monetary damages in this federal court, the undersigned proposes that the presiding District Judge **FIND** that this court lacks subject matter jurisdiction over such a claim and the same must be dismissed under the Eleventh Amendment and the *Will* doctrine. Moreover, in light of the plaintiff's Motion to Amend, which states that the plaintiff did not intend to sue the WVRJCFA or the WRJ but, rather, intended to sue the Administrators of those facilities (which will be addressed further below), it appears that the plaintiff does not oppose the dismissal of the WVRJCFA and the WRJ as defendants in this matter.

### B.    The plaintiff's Motion to Amend Complaint.

To the extent that the plaintiff is attempting to amend his Amended Complaint to add the Administrators of the WVRJCFA and the WRJ (who have not been specifically identified by the plaintiff in his motion), the undersigned proposes that the presiding District Judge **FIND** that such amendment would be futile and, thus, the plaintiff's Motion to Amend [Amended] Complaint (ECF No. 39) should be **DENIED**.  First, as noted above, the plaintiff has not specifically identified the Administrators (incorrectly referred to as "Directors" in the plaintiff's Motion to Amend); nor do his pleadings contain any factual allegations concerning specific conduct by these individuals that would support a plausible Eighth or Fourteenth Amendment claim.[4]  In fact, other than the conclusory statement by the plaintiff that he intended to sue the Administrators "personally," the plaintiff's pleadings do not contain any allegations at all concerning these individuals.

Moreover, even if the plaintiff were permitted to amend his Amended Complaint to name these Administrators as defendants, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel.  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shakka v. Smith*, 71 F,3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison

---

[4]  The record does not demonstrate, and the undersigned has been unable to clearly determine, whether the plaintiff was a pre-trial detainee or a sentenced prisoner at the time of the alleged incidents. Conditions of confinement, including medical treatment, of state pre-trial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992).  However, the analysis of such claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach.  As noted by the United States Court of Appeals for the Fourth Circuit in *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), "we need not resolve whether [the plaintiff] was a pretrial detainee or a convicted prisoner because the standard in either case is the same, that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'" *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).  Thus, to the extent that the plaintiff was a pre-trial detainee, rather than a sentenced prisoner, at the time of these events, the analysis is essentially the same.

personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853.  The plaintiff has made no such allegations concerning the Administrators of the WVRJCFA and the WRJ.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that, pursuant to the standards set forth in *Twombly* and *Iqbal*, the plaintiff has not stated a claim upon which relief may be granted against these proposed defendants and, thus, amendment of his Amended Complaint would be futile.  Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion to Amend [Amended] Complaint (ECF No. 39).

### C.    The plaintiff's claims against unnamed correctional officers.

The WVRJCFA's Motion to Dismiss failed to address the plaintiff's claim in his Amended Complaint that unidentified "Correctional Officers did violate my constitutional rights under the 8th Amendment by having me handcuffed and chained during transport while being in pain and suffering."   (ECF No. 9 at 2, ¶ 12). Nevertheless, because the plaintiff has not specifically identified any of the correctional officers who allegedly handcuffed and chained him, and because this statement amounts to conclusory allegations unsupported by specific facts, the undersigned proposes that the presiding District Judge **FIND** that such allegations fail to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6), pursuant to the standards set forth in *Twombly* and *Iqbal, supra*.

**D.    The PrimeCare Defendants' Motion to Dismiss and Supplemental Motion to Dismiss, or in the alternative, Motion for Summary Judgment.**

The PrimeCare Defendants have moved to dismiss the plaintiff's Amended Complaint on the basis that it fails to state a plausible claim of deliberate indifference to a serious medical need against any of the PrimeCare Defendants and because the plaintiff has failed to comply with the pre-requisites of the Medical Professional Liability Act ("MPLA"), W. Va. Code §§ 55-7B-1 *et seq.* The PrimeCare Defendants also assert that PrimeCare Medical, Inc. and PrimeCare Medical of West Virginia are not "persons" who may be sued under 42 U.S.C. § 1983, and that the individual PrimeCare Defendants are entitled to qualified immunity. In the alternative, the PrimeCare Defendants assert that they are entitled to judgment as a matter of law on the plaintiff's deliberate indifference claim based upon undisputed evidence in the plaintiff's medical records, as argued in their Supplemental Motion and Memorandum of Law in support thereof (ECF No. 52 and 53). The undersigned will address each argument in turn.

*Deliberate indifference to a serious medical need*

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.,* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a

"'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.,* at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*, at 837. "In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

Because PrimeCare Medical of West Virginia ("PrimeCare") is the contracted medical provider for the WVRJCFA, a state agency, the deliberate indifference standard is applicable to the conduct of PrimeCare and its individual employees, who may be considered to be acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1998). Although the PrimeCare Defendants have argued in their Motion and Memorandum of Law that PrimeCare Medical, Inc. and PrimeCare Medical of West Virginia are not "persons" under section 1983 (ECF No. 34 at 8), the Fourth Circuit and other federal courts have held that "[a] private corporation is liable under § 1983 . . . when an official policy or custom causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Motto v. Corr. Med. Servs.,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Correctio. Med. Servs.,* Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D. W. Va,., Dec. 18, 2008) (Faber, J. (unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997). However, the plaintiff has not pled any allegations concerning such a policy or custom with regard to the conduct of PrimeCare Medical, Inc. or PrimeCare Medical of West Virginia. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a plausible Eighth Amendment claim against PrimeCare Medical, Inc., or PrimeCare Medical of West Virginia, and that the plaintiff's claims against them should be dismissed for failure to state a claim upon which relief can be granted.

Turning to the conduct of the individual PrimeCare defendants, the burden of demonstrating deliberate indifference to a serious medical need is very high. It is well

settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). For example, in *Sosebee*, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct <u>might</u> establish deliberate indifference to a serious medical need.

In *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye. *Id.* at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. *Id.* The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. *See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate

indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).   As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The PrimeCare Defendants' Memorandum of Law asserts that the plaintiff's Amended Complaint neither pleads nor meets the legal threshold for a viable Eighth Amendment claim.  (ECF No. 34 at 4-5).  Their Memorandum of Law states:

> The Plaintiff in this case has failed to allege that the Defendants were deliberately indifferent to his serious medical needs and, therefore, his claims do not meet the minimum threshold requirements for the Eighth Amendment violation.  He alleges only that they committed "medical neglect," "medical malpractice" and "failed to offer medical attention." The Fourth Circuit Court of Appeals has made it clear that medical malpractice will not sustain a claim for a violation of a prisoner's constitutional rights.  *Sosebee v. Murphy*, [797 F.2d 179, 181 (4th Cir. 1986)].  Even when viewed in the light most favorable to the Plaintiff, his Complaint fails to meet the minimum threshold requirement for a viable civil rights claim under the 8th and 14th Amendment, and should be dismissed.

(ECF No. 34 at 5).

The plaintiff's initial Response states:

> Western Regional Jail and the medical department there had known since March of 2013 that I was starting to have heart problems.  I had written a grievance on April 17, 2013 stating that I was having problems with one of my by-pass and that it was starting to fail and that I needed to see my cardiologist.  This grievance was with the Regional Jail.

> Before that one, I had written a grievance to the medical department.  As you can see by the evidence presented, the had [sic; head?] of medical, Ms. Erin Lewis, who I believe is also Nurse Jane Doe-2, stated that I had not been referred to a cardiologist.

However, I also submit with evidence a letter from Dr. Paul M. Blake, III, dated March 27, 2013, had [sic; who] did indeed recommend me to see my cardiologist in Charleston.  I also submit into evidence that Western Regional Jail did in fact transported [sic; transport] me to South Central Regional Jail due to medical reasons.

The most reasonable thing to do, even a common person should have known, would have been to transport me to the nearest hospital, in this case, St. Mary's Medical Center, to make sure that the chest pains I was suffering from were in fact from a heart attack and that I was safe enough to transport to another jail or hospital.  With the evidence provided, I believe that I have, in fact, proven that on August 6, 2014 that count 7[5] of the amended complaint did happen.  Dr. Wong and Head Nurse Jane Doe-2 did in fact deny me proper medical attention.  A lay person would know that a person having chest pains would need to be seen by a doctor.

(ECF No. 50 at 2-3).  The plaintiff also attached what appears to be a typed summary pulled from the plaintiff's medical chart concerning his medical treatment between January 20, 2012 and April 9, 2014, an inmate grievance form dated April 17, 2013, and a letter dated March 27, 2013 from Paul M. Blake, III, MD concerning his treatment of the plaintiff on March 27, 2013, and his recommendation that the plaintiff follow-up with this cardiologist in Charleston "within the next 2-3 weeks."  (*Id.* at 5-8).   The plaintiff has made notations on the medical records, reiterating his arguments that the WRJ was aware of the plaintiff's existing heart problems and that, on August 6, 2013, he should have been taken to the closest hospital, which was St. Mary's Medical Center, instead of being transported to the SCRJ.

The PrimeCare Defendants' Memorandum of Law in support of their Supplemental Motion contains a "Statement of Facts" section detailing the plaintiff's medical treatment between July 23, 2013 and July 31, 2013 and also on August 6, 2013,

---

[5]   The plaintiff's Amended Complaint contains 12 numbered paragraphs.  It appears that the plaintiff considers each paragraph therein to be a "count."

with attached excerpts from the plaintiff's medical records.   The Statement of Facts states in pertinent part as follows:

In his Amended Complaint, the plaintiff alleges that Dr. Wong and the unnamed nurses violated his constitutional rights and conspired to commit medical neglect and medical malpractice by not providing medical attention or calling 911 when he had a heart attack on June [sic; July] 23, 2013.   The medical records attached hereto as **Exhibit A** do not support the plaintiff's allegations.   In fact, it was on July 26, 2013 that the plaintiff reported to the medical unit with complaints of chest pain.   An EKG was performed and was faxed to Dr. Baldera, another physician who works for PrimeCare Medical of West Virginia, Inc.   Dr. Baldera read the EKG and gave an order for aspirin at 5:26 p.m.   At 8:44 p.m., on that same date, the plaintiff was moved to the medical unit with no further complaints of chest pain, so that he could be closely monitored and observed at all times.   At that time, his vital signs were:  blood pressure 150/80, pulse 53, oxygen level 98%, and respirations 20 per minute.   He was resting comfortably in the cell with no signs of distress.

The plaintiff continued to be housed in the medical unit from July 26, 2013 until July 29, 2013 when Dr. Baldera made his next scheduled visit to the facility.   During that entire time, he continued to exhibit normal vital signs and had not complained of chest pain even once during that entire time.   In fact, he had no complaints at all.   He had continued on his normal medications, as well as an antianginal medication.   When Dr. Baldera examined him on July 29, he noted that a referral to the patient's regular cardiologist, Dr. Thakker, at Charleston Area Medical Center in Charleston, West Virginia, had been requested and was still pending.   At that time, he ordered that the plaintiff could be returned to the general population.   (*See* **Exhibit A**).

However, despite Dr. Baldera's orders, the medical staff at the Western Regional Jail continued to house the plaintiff in medical for two more days so that they could keep him under close observation.   Again, the results were the same.   He had normal vital signs, no complaints of chest pain, and no complaints of any other kind.   On July 31, 2013, Dr. Dominique Wong made her regular visit to the facility.   She examined the plaintiff and noted that he denied any chest pains since the initial episode that brought him to medical on July 26th, which was relieved by nitroglycerin.   A repeat EKG that was performed at her direction was unchanged from the one performed on the 26th and also unchanged from a previous one in February 2013.   The plaintiff reported no shortness of breath, no chest pain, no abdominal pain and stated that he was able to tolerate exertion without chest pain.   She noted that his last stress test was one year ago and that he had a stent placed two years ago.   She added aspirin to his regular regimen of medication and noted that he was

awaiting an appointment with his cardiologist. As Dr. Baldera had ordered previously, Dr. Wong stated that the plaintiff was well enough to return to general population and she advised him to immediately return to medical if his symptoms reoccurred. (*See* **Exhibit A**).

(ECF No. 53 at 3-5). The PrimeCare Defendants' Memorandum of Law further details the plaintiff's treatment on August 6, 2014 as follows:

The plaintiff's second complaint, as stated in his Amended Complaint, is that Dr. Wong and the unnamed nurses violated his constitutional rights and conspired to commit medical neglect and medical malpractice by not calling 911 or giving medical attention when he was having a heart attack on August 6, 2013 at 11:02 a.m. Again, the medical records attached as **Exhibit B** show otherwise.

When the plaintiff was released from the medical unit to return to the general population by Dr. Wong on July 31st, he was advised by her to return to medical immediately if his symptoms returned. On August 6th, he returned to the medical unit complaining of chest pains, stating that he did not take his medication that day, which would have included his antianginal medication. At that time, an EKG was performed and the result was abnormal. Dr. Wong was not scheduled to be at the facility that day, so she was called for orders, but the staff was unable to reach her on their first attempt, most likely due to lack of cell phone coverage. Rather than trying an alternate telephone number for Dr. Wong, or trying to reach another physician, the staff obtained on [sic; an] order to transfer the plaintiff to the South Central Regional Jail in Charleston on a permanent basis, as they knew that his cardiologist, Dr. Thakker, was located in Charleston and had previously treated the plaintiff at CAMC in Charleston. The transfer would allow the plaintiff to be closer to his cardiologist and his treating facility, should he need to be treated there.

When the plaintiff arrived at South Central Regional Jail, he was taken to the medical unit, where he again complained of chest pain. His EKG was abnormal. Dr. Wong was called and she gave orders to administer nitroglycerin every 5 minutes until his chest pain decreased and then to send him to the emergency room. Nitroglycerin was immediately administered and relieved his chest pain from 5 to 2 on a 1 to 10 scale. An ambulance was called and he was taken to CAMC Memorial Hospital, where he was admitted and a heart catheterization with stent placement was performed.

Following his cardiac procedure, the plaintiff was discharged from CAMC on August 10, 2013. He was housed in the medical unit until August 15, 2013, so that he could be closely monitored and the medical personnel could ensure that he received the appropriate follow-up care,

including medication, diet and incision care.  Thereafter, from August 15 through August 20th, he was housed in a secure unit on suicide watch.  On August 20th, he was released to the general population.

(ECF No. 53 at 5-6).

On August 18, 2014, the plaintiff filed a Response to the PrimeCare Defendants' Supplemental Motion (ECF No. 54).  In that Response, the plaintiff acknowledges that he incorrectly stated the date of the first incident, and that it was, indeed, on July 26, 2013.  (*Id.* at 1).  For the most part, the plaintiff does not dispute the PrimeCare Defendants' statement of the relevant facts.  He does, however, take issue with the Primecare Defendants' characterization that the undisputed evidence does not support his claims.  His Response states in pertinent part:

> I admit that the date of 7/23/2014 [sic; 2013] was incorrect and that the date of 7/26/2014 [sic; 2013] is the correct date.  That being said, however, it is stated that an EKG was performed on 7/26/2014 [sic; 2013].
>
> The said EKG was abnormal.  Even though aspirin was given at 5:26 p.m. the beginning of the event started at 4:00 p.m., an hour and a half before said treatment began.  By that time, damage had already been done.  No nitroglycerin was given at that time.
>
> The EKGs taken at Western Regional Jail on 8/6/2014 [sic; 2013] that were abnormal were the same EKGs that South Central used to determine that 911 should be called.
>
> It is the cardiac enzymes that a hospital uses to determine if the patient has had a heart attack or not.  This can be confirmed by any ER doctor or with my own cardiologist, Dr. Thakker.  This is done by a blood extract.
>
> The request to visit my cardiologist was not filed until August 1, 2013, after my heart attack on August [sic; July] 26, 2013.  Not on July 29, 2013 as stated.
>
> It should be noted on all proofs that high blood pressure was never an issue.  And yet a heart attack did exist at that time.
>
> In the defendants' own statement, an emergency did exist on August 6, 2014 [sic; 2013].  I was admitted to CAMC Memorial Hospital

because of that emergency and I was given a heart catheterization with a stent placement because the said heart attack did occur.

I should have been sent to St. Mary's Hospital, if for no other reason than to make sure I was medically able to be transported without further endangering my life.

The EKGs taken on August 6, 2013 should have been used to also send me to St. Mary's, if nothing else would have proven either way if I did in fact suffer a heart attack.

(ECF No. 54 at 1-2).

Even taking all of the evidence in the light most favorable to the plaintiff, it is clear that the plaintiff was evaluated and treated by the medical providers affiliated with , 457 PrimeCare for his complaints of chest pain, and there is no evidence that Dr. Wong, Head Nurse Jane Does 1 and 2 (who have never been specifically identified by the plaintiff), or any other employee of PrimeCare was deliberately indifferent to the plaintiff's serious medical needs. Rather, the evidence largely demonstrates the plaintiff's disagreement with the professional judgment and course of treatment selected by the defendants. At most, the allegations in the plaintiff's Amended Complaint and the undisputed evidence of record might support a claim of negligence, which is not actionable under the federal constitution and section 1983.

Based upon the undisputed facts, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to establish that PrimeCare or any of its individual employees were deliberately indifferent to any of the plaintiff's serious medical needs. Because the plaintiff has not established a violation of his constitutional rights, the individual defendants are also entitled to qualified immunity. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999) (Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory

or constitutional rights of which a reasonable person would have known); *Saucier v. Katz*, 533 U.S. 194 (2001) (If the allegations do not give rise to a constitutional violation, a defendant is entitled to qualified immunity and no further inquiry is necessary).

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact, and that the PrimeCare Defendants are entitled to judgment as a matter of law on the plaintiff's Eighth and/or Fourteenth Amendment claims.

## *The Medical Professional Liability Act*

The PrimeCare Defendants also asserts that, to the extent that the plaintiff's Amended Complaint is alleging that the defendant's conduct constitutes negligence or medical malpractice, which does not rise to the level of a constitutional violation, it is undisputed that the plaintiff has failed to satisfy the pre-requisites of the West Virginia Medical Professional Liability Act ("MPLA"), specifically, W. Va. Code § 55-7B-6(b), which requires a person bringing a medical malpractice action to serve a notice of claim and a screening certificate of merit from a qualified expert health care provider indicating that a defendant's conduct violated the applicable standard of care, which resulted in injury to the plaintiff, and this notice and certificate must be served on the proposed defendants at least 30 days prior to filing suit. *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006). (ECF No. 34 at 6-7). The PrimeCare Defendants' initial Memorandum of Law further asserts:

> By his failure to comply with the provisions of W. Va. Code § 55-7B-6, the plaintiff has failed to demonstrate through the mandatory screening procedure that his claim[s] against these Defendants have been appropriately screened by an expert and certified as being worthy of pursuit in litigation. The purpose of requiring the notice of claim and

22

> screening certificate of merit prior to the filing of a medical malpractice
> claim is twofold: "(1) to prevent the making and filing of frivolous medical
> malpractice claims and lawsuits; and (2) to promote the pre-suit
> resolution of non-frivolous medical malpractice claims." *Hinchman v.*
> *Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005).

(*Id.* at 7). The PrimeCare Defendants further assert that this requirement applies to cases filed in both state and federal court. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); ); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision).

The MPLA defines "health care" to mean "any act or treatment performed or furnished or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *See* W. Va. Code § 55-7B-2(e). The MPLA defines "medical injury" as meaning "injury or death to a patient arising out of or resulting from the rendering of or failure to render health care." *See* W. Va. Code § 55-7B-2(h). The MPLA defines "health care provider" to include a person, . . . [or] corporation, . . . licensed or certified in this state or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, registered or licensed practical nurse, . . . or any officer, employee or agent thereof acting in the course and scope of such officer's, employee's or agent's employment." *See* W. Va. Code § 55-7B-2(g). The MPLA governs "any liability for damages resulting from . . . injury of a person for any tort . . . based on health care services rendered or which should have been rendered, by a health care provider or health care facility to a patient." *See* W. Va.

23

Code § 55-7B-2(i).

The plaintiff has not contested the applicability of the MPLA's requirements to his claim or his failure to comply therewith, and the undersigned agrees that the MPLA is arguably applicable to the plaintiff's allegations. Rather, the plaintiff merely attempts on his own to establish that he has meet the elements of proof required by W. Va. Code § 55-7B-3 that Dr. Wong and the nurses:  (a) failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the healthcare provider belongs acting in the same or similar circumstances; and (b) increased the risk of harm to the patient, which was a substantial factor.  (ECF No. 50 at 3).  The plaintiff fails to realize, however, that, without the screening certificate of merit from a <u>qualified expert health care provider</u> making such statements and supporting it with evidence, he cannot proceed with his negligence claims.

Accordingly, to the extent that the plaintiff's Complaint contains allegations that would support a negligence or medical malpractice claim, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not complied with the MPLA requirements, and dismissal of any such claim is required.

## <u>RECOMMENDATIONS</u>

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by the WVRJCFA, and also including the WRJ and any correctional officers employed therein (ECF No. 29), the Motion to Dismiss filed by the PrimeCare Defendants (ECF No. 33), and the PrimeCare Defendants' Supplemental Motion to Dismiss, or in the alternative, Motion for Summary Judgment (ECF No. 52).  It is

further respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion to Amend [Amended] Complaint (ECF No. 39) and dismiss this matter from the docket of the court.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

December 11, 2014

Dwane L. Tinsley
United States Magistrate Judge

25